**IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION**

**This Document Relates to: All Cases**

**MDL NO. 2592**

United States District Court, E.D. Louisiana.

Signed April 6, 2016

Filed April 8, 2016

**SECTION L**

<u>**ORDER & REASONS**</u>

ELDON E. FALLON, UNITED STATES DISTRICT JUDGE

Before the Court are the parties' briefs concerning Defendants' Motion for Entry of a Protective Order Regarding Attorney Work Product.[1] Exs., 1, 2. Having reviewed the parties' letter briefs, the applicable law, and hearing oral argument the Court now issues this Order & Reasons.

## I. BACKGROUND

This matter arises from damages Plaintiffs claim to have suffered from the manufacture, sale, distribution, and/or use of the medication known as Xarelto, an anti-coagulant used for a variety of blood-thinning medical purposes. The Plaintiffs have filed suits in federal courts throughout the nation against Defendants, Bayer Corporation, Bayer HealthCare LLC, Bayer HealthCare Pharmaceuticals Inc., Bayer HealthCare AG, Bayer Pharma AG, and Bayer AG (collectively, Bayer), Janssen Pharmaceuticals, Inc., Janssen Research & Development, LLC, Janssen Ortho LLC, and Johnson & Johnson (collectively, Janssen). The Plaintiffs allege that they or their family members suffered severe bleeding and other injuries due to Xarelto's allegedly inadequate warning label, among other things, as well as Xarelto's purported lack of reliance on regular blood monitoring.

The Judicial Panel on Multidistrict Litigation determined that the Plaintiffs' claims involved common questions of fact and that centralization under 28 U.S.C. § 1407 would serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. Therefore, on December 12, 2014, the Judicial Panel on Multidistrict Litigation consolidated the Plaintiffs' Xarelto claims into a single multidistrict proceeding ("MDL 2592"). MDL 2592 was assigned to Judge Eldon E. Fallon of the United States District Court for the Eastern District of Louisiana to coordinate discovery and other pretrial matters in the pending cases. Subsequent Xarelto cases filed in federal court have been transferred to this district court to become part of MDL 2592 as "tag along" cases. The Court has appointed committees to represent the parties, and discovery has commenced.

## II. THE DEFENDANTS' MOTION

On March 16, 2016, the parties requested a status conference to discuss an issue pertaining to the discovery of lists of documents which Defense counsel showed to witnesses prior to their depositions. The Court subsequently set telephonic oral argument for March 28, 2016, and ordered the parties to submit letter briefing on the issue by March 23, 2016. R. Doc. 2830. Pursuant to the Court's Order, the parties timely filed their letter briefs (attached as Exhibits A and B), and participated in oral argument.

In the present motion, Defendants move the Court to issue a pretrial order labeling lists of documents compiled by counsel and shown to a witness prior to a deposition as attorney work product, thereby making the lists immune from discovery.

### A. Defendants' Brief (Ex. A).

Defendants take the position that the production of a list of the documents prepared by defense counsel and used for witness preparation intrudes on confidential opinion work product, because it reveals their opinions as to the significance of various documents and their approach or strategy in handling the matter. Defendants begin by citing case law from other circuits. The Defendants lean heavily on the Third Circuit's much-cited opinion in *Sporck v. Peil*, where the circuit court held that the selection and compilation of documents in preparation for pretrial discovery falls within the protected category of opinion work-product. 759 F.2d 312, 316 (3d Cir.1985). Defendants argue that *Sporck* announced the current majority rule, which they contend is followed by the Fourth and Eighth Circuits. *See In re Allen*, 106

---

1. While no motion was filed on the docket, the Court construes the Defendants' letter brief as a motion for the purposes of this Order & Reasons.

F.3d 582, 608 (4th Cir.1997); *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1320 (8th Cir. 1986).

Defendants also cite case law from the Fifth Circuit. Defendants first cite *Burns v. Exxon Corp.*, and argue that *Burns* is controlling. 158 F.3d 336 (1998). In *Burns*, the district court conducted a Rule 612 *in camera* review of a list of deposition preparation documents compiled by attorneys, and found that the documents were irrelevant to the issues before the Court. *Id.* at 342. The district court also found that withholding of the documents was harmless and moot, because the Plaintiffs already had the information in the record. *Id.* at 342–43. On appeal, the Fifth Circuit upheld the district court's ruling that the list of documents should not be disclosed. *Id.* at 343.

The Defendants also cite in *Hanover Ins. Co. v. Plaquemines Parish Government*, 304 F.R.D. 494 (2015). In *Hanover*, the Parish of Plaquemines claimed that Rule 612 of the Federal Rules of Evidence required the disclosure of all documents shown to the witness prior to the deposition. The District Court disagreed. The Court found that in a case involving over 20,000 documents of written discovery that "selection of documents [to prepare a witness for deposition] necessarily reveals the attorney's opinions regarding the litigation." *Id.* at 500. Defendants close by arguing *Burns* and *Hanover* control the present issues, and that the Court should issue a protective order stating the same.

### B. Plaintiffs' Brief (Ex. B)

The PSC argues in opposition that a list of documents used by the witness in preparation for a deposition is not privileged and should be discoverable. Further, they suggest that under Rule 612 of the FRE that they are entitled to know what the witness reviewed so they can effectively cross examine the witness. The PSC cites MDL courts that have compelled the production of lists of documents given to witnesses in preparation for deposition. For instance, the PSC contends that Bayer unsuccessfully raised the present work product objection in *In re Trasylol Prod. Liab. Litig.*, No. 08–MD–1928, 2009 WL 936597, at *3 (S.D.Fla. Apr. 9,

2009). In that case, Judge Middlebrooks of the Southern District of Florida rejected Bayer's argument, finding that disclosure would not "create[ ] a real, non-speculative danger of revealing counsel's thoughts." Similarly, in the Yaz/Yasmin litigation, Judge Herndon of the Southern District of Illinois held that Plaintiffs should be granted a complete list of the documents and materials reviewed by the witness in preparation for the deposition. *In re Yasmin and Yaz (Drospirenone) Marketing, Sales Practices and Relevant Prod. Liab. Litig.*, 2011 WL 2580764, at *3 (S.D.Ill. June 29, 2011). Judge Herndon also employed this procedure in the Pradaxa litigation, finding that "[e]ither party should be allowed to know what documents a witness reviewed prior to a deposition for purposes of efficacy. Neither side will be permitted to ask which, if any, of the documents reviewed were selected by counsel." *In re Pradaxa (Dabigatran Etexilate) Prod. Liab. Litig.*, 2013 WL 1776433, at *3 (S.D.Ill. Apr. 25, 2013); *see also In re Seroquel Prod. Liab. Litig.*, 2008 WL 591929 (M.D.Fla. Feb. 28, 2008).

Plaintiffs close by citing a case from the Southern District of Texas as in-circuit support for their position. In *Fisher v. Halliburton*, the district court held that "to imbue every compilation of documents reviewed by a witness before testifying—at trial or at deposition—with work product privilege protection would all but write Rule 612 of the Federal Rules of Evidence out of existence." 2009 WL 483890, at *1–2 (S.D.Tex. Feb. 25, 2009). Plaintiffs contend that *Fisher* controls the present issue, and that the Court should therefore decline to label the at-issue lists of witness preparation documents as opinion work product.

## III. DISCUSSION

### A. Historical Background

The present matter lies at the intersection of the purposes of the memory-refreshment doctrine, codified in Federal Rule of Evidence 612, and the work-product doctrine, first articulated in *Hickman v. Taylor*. Numerous scholars have observed that there is a potential for conflict between these two

doctrines. *See* Martha J. Aaron, *Resolving the Conflict Between Federal Rule of Evidence 612 and the Work-Product Doctrine: A Proposed Solution*, 38 U. Kan. L. Rev. 1039, 1041 (1990); Charles P. Cercone, *The War Against Work Product Abuse: Exposing the Legal Alchemy of Document Compilations As Work Product*, 64 U. Pitt. L. Rev. 639, 668 (2003); Daisy Hurst Floyd, *A "Delicate and Difficult Task": Balancing the Competing Interests of Federal Rule of Evidence 612, the Work Product Doctrine, and the Attorney-Client Privilege*, 44 Buff. L. Rev. 101, 138 (1996); Megan McCrea., *Civil Procedure-Disclosure of Attorney Work Product Under Federal Rule of Evidence 612: An Abrogation of Work Product Protection?*-Sporck v. Peil, *759 F.2d 312 (3d Cir.), Cert. Denied, 106 S. Ct. 232 (1985)*, 59 Temp. L. Rev. 1043, 1069 (1986); Alfreda Robinson, *Duet or Duel: Federal Rule of Evidence 612 and the Work Product Doctrine Codified in Civil Procedure Rule 26(b)(3)*, 69 U. Cin. L. Rev. 197, 244 (2000); *cf.* Michael Zimmerman, *An Ounce of Improper Preparation Isn't Worth the Cure: The Impact of Military Rule of Evidence 612 on Detecting Witness Coaching*, Army Law. 21, 24 (2014). In order to adequately address the concerns raised by academia and the present parties, the Court finds it helpful to review the history of the memory-refreshment doctrine and the work-product doctrine, as well as applicable precedent.

### i. Rule 612 and the Memory-Refreshment Doctrine

■ Federal Rule of Evidence 612 provides that: "an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness about it, and to introduce in evidence any portion that relates to the witness's testimony." Fed. R. Evid. 612(b). In the Fifth Circuit, to prove that Rule 612 is applicable to a writing, a party must show that "(1) the witness requires refreshment, and (2) the writing actually refreshes the witness's memory." *U.S. v. Carey*, 589 F.3d 187, 190 (5th Cir.2009); *see also* Fed. R. Evid. 612(a). Additionally, if the refreshment material is used before testifying, a court must also find that "justice requires" granting the adverse party Rule 612's options for attacking the witness's reliance on the refreshment material. Fed. R. Evid. 612(a)(2).

Rule 612 applies to materials used both while testifying and before testifying. Fed. R. Evid. 612(a). The Advisory Committee explicitly rejected a distinction between memory refreshment prior to testifying and during testifying, noting that "the risk of imposition and the need of safeguard is just as great in both situations." Fed. R. Evid. 612 advisory committee's note to 1972 enactment; *see also* Aaron, *supra*, at 1041 (citing *Berkey Photo, Inc. v. Eastman Kodak Co.*, 74 F.R.D. 613 (S.D.N.Y.1977) ("One can argue that the scope of inspection by opposing counsel should be broader when refreshment has occurred in private, because there is no court supervision to prevent abuses.")). "The vast majority of cases that have considered the issue have concluded that Rule 612 is applicable to depositions...." Victor J. Gold, 28 *Federal Practice & Procedure Evidence* § 6183 (2d ed.); *see also* 1 *McCormick On Evidence* § 9 (7th ed. 2013) (noting that the goals of memory-refreshment doctrine and Rule 612 are applicable to interviews conducted before trial).

■ The memory-refreshment doctrine, as codified in Rule 612, is a mechanism for guiding the examination of witnesses towards the ideal: a witness should have the facts clear in his or her mind, recall all important details, and be in command of his or her narrative during cross-examination. Clifford S. Fishman & Anne T. McKenna, 5 *Jones on Evidence* § 32:1 (7th ed. 2016); *see also* Fed. R. Evid. 612, advisory committee's note to 1972 enactment ("The purpose of the rule is ... to promote the search of credibility and memory."). But the courts recognize that this policy may be subject to abuse. A witness may not "parrot" what is written on the paper, or otherwise substitute refreshment material for the witness' own memory. Fishman, *supra*, § 32:1.

■ Two safeguards have traditionally been employed to alleviate the dangers of memory refreshment. First, before the witness is exposed to any refreshment material, the judge has the opportunity to determine that the witness's memory had lapsed. Aaron,

*supra*, at 1041. Second, opposing counsel is given the opportunity to review the refreshment material, and later cross-examine the witness regarding its contents. *Id.* With these cautionary remedies, the memory-refreshment doctrine walks the delicate line between either aiding a witness' memory or providing substitutes for a witness' memory.

While the purpose of Rule 612 is to aid the pursuit of truth by prompting the unavoidably imperfect memories of witnesses, courts struggle with litigants who attempt to use Rule 612 for purposes of discovery. *See Derderian v. Polaroid Corp.*, 121 F.R.D. 13, 17 (D.Mass.1988) (denying a Rule 612 request on the grounds that "Rule 612 is a rule of *evidence*, not a rule of *discovery*."). Scholars criticize courts for failing to acknowledge the discovery implications and accompanying incentives provided by Rule 612. For instance, in his treatise Floyd takes the position that "Rule 612, to the extent it allows a court to order disclosure of documents to an adversary, is a rule of discovery. Therefore, the rule needs to recognize the traditional limitations on discovery[, such as] work product protection...." Floyd, *supra*, at 138. Articles on this point are numerous, and scholars have suggested a variety of solutions. *See* Aaron, *supra*, at 1056–59 (arguing that Rule 612 should be confined to materials that a witness uses to refresh his recollection, rather than any documents examined prior to testifying); Cercone, *supra*, at 646–52 (2003) (criticizing the discovery gamesmanship that occurs in the shadow of Rule 612 and work-product doctrine, and suggesting that work-product doctrine be limited in response); Floyd, *supra*, at 135–38 (suggesting that Rule 612 should be amended to clarify its limitations in the face of work product privilege).

#### ii. The Opinion Work-Product Doctrine

Attorney-client privilege is one of the oldest common law privileges protecting confidential communications. *See Swidler & Berlin v. United States*, 524 U.S. 399, 403, 118 S.Ct. 2081, 141 L.Ed.2d 379 (1998). The privilege is intended "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). The scope of the privilege is governed by the principles of common law "as interpreted by United States courts in the light of reason and experience." Fed. R. Evid. 501. In addition to communications made between attorneys and clients or their agents that are protected by the attorney-client privilege, the work-product doctrine also protects materials prepared in anticipation of litigation that would not otherwise be privileged as attorney-client communications. *See generally Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947).

The work-product doctrine is defined as the "protection that applicable law provides for tangible material (or its intangible equivalent) prepared in anticipation of litigation or for trial." Fed. R. Evid. 502(g)(2). Work product protection encompasses both ordinary work product, such as memoranda and outlines, and opinion work product, including the opinions, strategies, or mental impressions of an attorney. Restatement (Third) Of The Law Governing Lawyers § 87 (2000). Ordinary work product is generally immune from discovery unless the party seeking disclosure "has a substantial need for the material in order to prepare for trial and is unable without undue hardship to obtain the substantial equivalent of the material by other means" or another exception applies (i.e., waiver of immunity or the use of work product by a client to commit a crime or fraud). *Id.* at § 88. Opinion work product, however, is immune from disclosure unless an exception applies or "extraordinary circumstances" warrant disclosure. *Id.* at § 89. A lawyer's analysis and mental processes are thus afforded broader protection under the doctrine than ordinary work product, because an attorney's analysis could be replicated by opposing counsel and is usually inadmissible in evidence at trial. *Id.* at § 87 cmt. b. Underlying factual information, on the other hand, that relates directly to disputed issues is usually discoverable in forms that do not reveal the lawyer's analysis and strategy. *Id.*

Prior to the adoption of the Federal Rules of Civil Procedure, pre-trial discovery was relatively limited, and thus American courts did not have a need to utilize a protective mechanism for work product. Jeff A. Anderson et al., *The Work Product Doctrine*, 68 Cornell L. Rev. 760, 765 (1983). At that time discovery was done through pleadings, so the attorney-client privilege was sufficient to prevent the attorney from being forced to divulge a client's secret on the witness stand at trial. *Id.* at 766. Upon the adoption of the Federal Rules of Civil Procedure and thereby the practice of notice pleading, discovery became necessary. This provided the impetus for expanding the work product protection to include materials prepared in advance of trial in addition to communications between attorney and client. *Id.* at 767. Over time, federal courts developed varying approaches for how to apply the Rules and appropriately protect trial preparation materials, leading the Advisory Committee to suggest a number of changes to the Rules during the 1940s. *Id.* at 771–72. In response, the United States Supreme Court sought to clarify the scope of work product protection by granting certiorari in the case of *Hickman v. Taylor*, which became the milestone decision articulating the standard of protection for work product. 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947).

In that case, an attorney for the owners of a tugboat retained records of interviews with witnesses after the tugboat sank and five crew members were killed. *Hickman*, 329 U.S. at 498, 67 S.Ct. 385. The records were retained in three forms: (1) written statements signed by the witnesses; (2) personal memoranda written by the attorney regarding interviews with certain witnesses; and (3) the attorney's unrecorded memories of the interviews. *Id.* A representative of one of the deceased crew members sought information about the written statements and personal memoranda through pre-trial interrogatories, which the attorney refused to supply as "privileged matter obtained in preparation for litigation." *Id.* at 499, 67 S.Ct. 385. The United States Court of Appeals for the Third Circuit denied discovery by invoking attorney-client privilege. The Supreme Court affirmed, but grounded its denial of discovery on a work-product doctrine that was more limited than the attorney-client privilege and which was not specifically identified in the Federal Rules. Anderson, *supra*, at 775–76.

After *Hickman*, the Advisory Committee drafted various modifications to the discovery rules to clarify the effect of the decision for lower courts, including drafting new Rule 26(b)(3) to codify the decision's holding in the 1970 amendments to the Federal Rules. *Id.* at 782–83. Because Rule 26(b)(3) codifies only part of the doctrine, an understanding of the underlying policies supporting the doctrine's historical development is useful in resolving work product discovery disputes which the rule does not directly address.

In *Hickman v. Taylor*, the Supreme Court explained the policy justifications for the work-product doctrine:

> Historically, a lawyer is an officer of the court and is bound to work for the advancement of justice while faithfully protecting the rightful interests of his clients. In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways...the 'Work product of the lawyer.' Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal

profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

329 U.S. 495, 510–11, 67 S.Ct. 385, 91 L.Ed. 451 (1947). The doctrine thus has several justifications, including the assumption that the adversarial system of justice is best served by the competitive development by opposing lawyers of their own factual and legal information. Restatement (Third) Of The Law Governing Lawyers § 87 cmt. b (2000). Protecting work product from discovery prevents ill-prepared opposing counsel from piggy-backing on the effort put forth by a more diligent attorney on the other side. *See United States v. Frederick*, 182 F.3d 496, 500 (7th Cir.1999) ("The work-product privilege is intended to prevent a litigant from taking a free ride on the research and thinking of his opponent's lawyer and to avoid the resulting deterrent to a lawyer's committing his thoughts to paper."). Additionally, the protection encourages the diligent representation of clients by reducing the risk that lawyers will forego thorough preparatory techniques, such as note-taking. *Id. But see In re San Juan Dupont Plaza Hotel Fire Litig.*, 859 F.2d 1007, 1018 (1st Cir.1988) ("[W]e think it unlikely that an attorney will forgo an integral part of his preparation due to his inability to shield that preparation as opinion work product").

### B. A Review of the Cases Discussing the Production of the Material at Issue

The Third Circuit court of appeal in *Sporck v. Peil*, 759 F.2d 312 (3d Cir.1985), was the first case to address the issue of whether a list of documents selected by counsel and reviewed by a witness in preparation for a deposition is discoverable, and concluded such material is not because it is attorney work product. *Sporck* arose in the context of a securities fraud class action. *Sporck*, 759 F.2d at 313. Over one hundred thousand documents were at issue in the case, and the plaintiff sought to depose Sporck, who was president of the defendant corporation and a key witness in the case. *Id.* At the deposition, plaintiffs' counsel asked Sporck which documents Sporck reviewed in preparation for the deposition. *Id.* at 313–14. Plaintiffs' counsel did not seek the identity of documents

which were given to Sporck by his attorneys. *Id.* Defense counsel objected, claiming that the question encroached on the defense's compilation of materials provided to Sporck for purposes of deposition preparation. *Id.* at 314. The district court subsequently found that the list of documents provided to Sporck had to be turned over, because the documents were not opinion work product. *Id.*

The Third Circuit disagreed. According to the Third Circuit, discovery of the compilation was contrary to one of the fundamental goals of work-product doctrine: providing breathing space for attorneys to prepare witnesses for depositions. *See id.* at 317. "In the instant case, without the protection that the work-product doctrine accords his preparation, defense counsel may have foregone a sifting of the documents, or at the very least chosen not to show the documents to [Sporck]." *Id.* The Court also found that the memory-refreshment doctrine, as codified in Rule 612, could not override work product protection unless a party appropriately laid a foundation under Rule 612. *Id.* at 318. Both the Fourth and Eighth Circuits have followed the majority's opinion in *Sporck. See In re Allen*, 106 F.3d 582, 608 (4th Cir.1997); *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1329 (8th Cir.1986).

The Fifth Circuit has not adopted the *Sporck* court's approach. Only one Fifth Circuit case appears potentially relevant to the matter at hand, and the Court finds that *Burns v. Exxon Corp.*, 158 F.3d 336 (5th Cir.1998), does not adopt the holding of *Sporck*. In *Burns*, the district court denied a Rule 612 motion to compel refreshment materials on the grounds that the documents were mostly irrelevant to claims and defenses, as well as harmless and moot to the extent that the plausibly relevant documents were not produced. *Id.* at 342–43. The Fifth Circuit upheld the district court, declining to overrule the district court's factual determination of irrelevance and mootness following *in camera* inspection of Rule 612 material. *Id.* at 343. The Fifth Circuit therefore did not rule on the *Sporck* question of when preparatory materials constitute work product, or when and if Rule 612 is the proper mechanism for seeking preparatory materials.

However, one district court opinion[2] from the Fifth Circuit can be read as following *Sporck*. In *Hanover Ins. Co. v. Plaquemines Parish Government*, 304 F.R.D. 494, 500 (E.D.La.2015), The district court held that work-product privilege prevents a party from using Rule 612 to compel a witness to identify all documents shown to him or her by opposing counsel prior to the deposition. While *Hanover* does not cite *Sporck*, the logic of the Third Circuit inundates the *Hanover* opinion. In *Hanover*, the Court expressed the same concerns as the Third Circuit when it found that the selection of documents by counsel inherently revealed counsel's opinions regarding the litigation, and therefore material identifying selected documents was protected opinion work product. *Compare id.* ("[A]sking a witness to identify all the documents that he was shown by the corporate attorney prior to the deposition necessarily asks the witness to reveal the thoughts and opinions of the corporate attorney."), *with Sporck*, 759 F.2d at 316 (internal citations omitted) (quoting *James Julian, Inc. v. Raytheon Co.*, 93 F.R.D. 138, 144 (D.Del.1982)) ("In selecting and ordering a few documents out of thousands counsel could not help but reveal important aspects of his understanding of the case.").

The holding in *Sporck* has not been uniformly embraced outside the Third Circuit. In direct opposition to *Sporck* and its progeny, some courts have held that lists of materials given to a witness by counsel are not attorney work product. One commentator titles this position the "No Problem" approach, because withholding work product classification eliminates the problematic conflict between work-product doctrine, as codified in Rule 26(b)(3), and memory-refreshment doctrine, as codified in Rule 612. *See* Cercone, 64 U. Pitt. L. Rev. 639, 668 (2003). While the

logic of this position can be traced to the dissent in *Sporck*, the first court to formally adopt the "No Problem" approach was the District of Kansas in *Pepsi–Cola Bottling Co. of Pittsburg v. Pepsico, Inc.*, No. CIV.A. 01–2009–KHV, 2001 WL 1478659, at *1 (D.Kan. Nov. 8, 2001). In *PepsiCo*, plaintiffs' counsel sought the documents reviewed by Gerald Casey, Vice President and General Counsel of PepsiCo, in preparation for his deposition. *Id.* at *1. Counsel for the defense objected, arguing that the materials were protected by attorney-client privilege. *Id.* Reconsidering the motion to compel after an initial denial, the district court found that "the identities of the documents that Mr. Casey reviewed prior to his deposition ... are objective facts and are not, in themselves, the opinion or thought processes of an attorney." *Id.* at *2. In so holding, the District of Kansas rejected the *Sporck* majority's reasoning. *Id.* at *2; *see also U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, No. 05–CV–2192–JWL–DJW, 2008 WL 2548129, at *10 (D.Kan. June 23, 2008) (relying on *PepsiCo* in finding that "[t]he risk for invasion of work product is minimal at best" when a party seeks documents shown by an attorney to a witness in preparation for a deposition); *accord Hotel Fire Litig.*, 859 F.2d at 1013–19 (applying a meaningfully different standard than chosen by the *Sporck* dissent, but nevertheless agreeing that the trial strategy which may be gleaned from witness preparation materials is insufficient to allow work product protection to trump Rule 612). Thus, the dissent in *Sporck* has become the majority rule in at least one district.

While neither *PepsiCo* nor *U.S. Fire* has been explicitly adopted in the Fifth Circuit, the Southern District of Texas arguably joined *PepsiCo* in its holding in *Fisher v. Halliburton*, Civ.A. Nos. 05–1731, 06–1971, 2009 WL 483890, at *1–2 (S.D.Tex.2009). In

2. Magistrate Judge Roby's opinion in *Freeport–McMoran Sulphur, LLC v. Mike Mullen Energy Equip. Res., Inc.*, Civ.A. No. 03–1496, 2004 WL 1237450, at *7–8 (E.D.La. June 2, 2004), does not reach the question before the Court. In *Freeport*, the party seeking production of preparatory materials conceded that the materials were protected by work-product doctrine, and instead argued that work-product immunity was waived by virtue of Rule 612. *Id.* at *7. The Court agrees

with the Magistrate that the "waiver" approach to resolving conflicts between Rule 612 and work-product doctrine, *see* Cercone, 64 U. Pitt. L. Rev. 639, 670–71 (2003), is flawed. To the extent that the Magistrate later applied the prongs of Rule 612, the Magistrate was applying the framework jointly agreed to by the parties. The propriety of said framework was not argued to the Magistrate.

*Fisher*, the plaintiffs deposed Keith Richard, a former employee of defendant Halliburton. *Id.* at *1. Richard's attorney instructed Richard not to answer questions concerning documents Richard reviewed in preparation for his deposition. *Id.* The Court declined to extend work product privilege to "the identity of the documents [the deponent] reviewed in preparation for his deposition," on the grounds that "imbue[ing] ever compilation of documents reviewed by a witness before testifying—at trial or at deposition—with work product privilege protection would all but write Rule 612 of the Federal Rules of Evidence out of existence." *Id.* at *1–2; *see also In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1240 (5th Cir.1982) (quoting Fed R. Civ. P. 26(b)(3)) (holding that materials prepared by an investigative audit committee were not work product because they were not the "mental impressions, conclusions, opinions or legal theories of an attorney").

Since the advent of the controversy involving the discovery of deposition preparation material, judges and academics faced with the tension between memory-refreshment doctrine and work-product doctrine have suggested that counsel employ alternative mechanisms to obtain the information they seek. For instance, the *Sporck* court suggested that counsel could avoid work product claims by "first elicit[ing] specific testimony from petitioner, and then question[ing] petitioner as to which, if any, documents informed that testimony . . . ."; *see also* Cercone, *supra*, at 690–91 (suggesting that counsel avoid the "work product conundrum" by applying a questioning protocol that allows the deposing attorney to identify preparatory documents "through her own efforts and wits"). The Court labels this position the "Method of Questioning" approach, as it focuses on the procedure of questioning rather than the substantive conflict between the work-product and memory-refreshment doctrines.

Judge Herndon of the Southern District of Illinois has provided a "Method of Question-

ing" solution in two MDLs before his court, *Pradaxa* and *Yasmin*. In the *Yasmin* MDL, Judge Herndon joined the holding of *Sporck*, but provided a twist. *See In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Relevant Prod. Liab. Litig.*, No. 3:09–MD–02100–DRH, 2011 WL 2580764, at *1 (S.D.Ill. June 29, 2011). Concerned by some questions posed by the plaintiffs, Bayer sought a ruling that "questioning designed to elicit the identity of documents *compiled by defense counsel* and reviewed by the witness in preparation for his or her deposition."[3] *In re Yasmin*, 2011 WL 2580764, at *1. Judge Herndon agreed with Bayer, and cited *Sporck* in holding that compilations of deposition preparation materials prepared by lawyers may constitute opinion work product. *Id.* at *1–2.

However, Judge Herndon distinguished his views from *Sporck*, finding that compilations of preparatory materials are only work product insofar as they reveal which documents were compiled by counsel. *Id.* at *3. "Identification of the documents or materials that a witness reviewed prior to his or her deposition—without designating which, if any, of the documents were selected by counsel—does not implicate the same work product concerns [as the disclosure of an attorney's compilations of witness preparation materials]." *Id.* at *2; *see also In re Pradaxa (Dabigatran Etexilate) Prod. Liab. Litig.*, 2013 WL 1776433, at *3 (S.D.Ill. Apr. 25, 2013) (rejecting the argument that all documents reviewed by employee witnesses necessarily have to be documents selected by counsel). In so holding, Judge Herndon found that a list of deposition preparation materials are subject to the production and evidentiary principles of Rule 612, as well as generally discoverable. *Id.* at *3–4. "Plaintiffs' counsel will be permitted to inquire of Bayer's witnesses the complete list of documents and materials the witness reviewed prior to and in preparation for the deposition . . . . The same principle applies with the application of

---

**3.** Bayer conceded that the work product privilege does not limit the identification of "documents reviewed by the witness in preparation for the deposition *independent of counsel* . . . ." *See In re Yasmin & Yaz (Drospirenone) Mktg., Sales*

*Practices & Relevant Prod. Liab. Litig.*, No. 3:09–MD–02100–DRH, 2011 WL 2580764, at *1 (S.D.Ill. June 29, 2011) (citing a June 6, 2011, email from S. Weber to Chief Judge Herndon).

[Rule] 612." *Id.* While *Yasmin* does not explicitly refer to Rule 26(b), the opinion recognizes a distinction between the production of preparatory documents pursuant to Rule 26(b), and the production of refreshment materials pursuant to Rule 612 and its foundation requirements.

## IV. DISCUSSION

### A. The Applicable Rule for Discovery of Lists of Witness Preparation Materials

At first blush, the dispute in this case over the discovery of deposition preparation material seems to present a clash between Federal Rule of Evidence 612 and the attorney-client/work-product doctrine. As revealed in the Court's historical review, it is clear that each doctrine is historically grounded, and both are highly treasured legal principles. They are two superheroes of the legal world. To appropriately characterize or adequately describe the significance of a conflict between them in today's terminology would be to say it is a contest between Batman and Superman.

But when the present issue in this case is viewed microscopically, that is to say upon close examination, two separate and distinct issues are revealed: (1) is an adverse party entitled to discover what material or documents a witness reviewed in preparation for a deposition; and (2) are these documents or material admissible, and can they be used to interrogate the witness. The first question involves the scope of proper discovery, and the second involves admissibility and use. The first is governed by Rule 26 of the Federal Rules of Civil Procedure, and the second is governed by Rule 612 of the Federal Rules of Evidence.

The PSC seeks the production of lists of documents reviewed prior to depositions. Because this is a discovery request, the foundational requirements of Rule 612 are inapplicable at this point, and the Court must apply Rule 26.

■■■ Rule 26(b) defines the scope of discovery as "any nonprivileged matter that is relevant to the party's claim or defense and proportionate to the needs of the case...."

unless otherwise limited by a court order." The plain meaning of Rule 26(b) suggests that it controls all requests for the production of documents. Rule 612 is not a court order for purposes of Rule 26(b). Instead, Rule 612 simply provides an adverse party options for impeaching a witness's memory concerning memory refreshment materials. To ensure that the witness is testifying from a refreshed memory and not simply parroting the document presented to him for review, Rule 612 provides that the memory refreshment materials must be "produced *at the hearing*," Fed. R. Evid. 612(b) (emphasis added). Production of discoverable material at the hearing ensures that the witness can be effectively cross examined, and the document or parts of it may be introduced into evidence. The reference to production in Rule 612 is incidental from this perspective, and cannot be read as displacing Rule 26(b)'s dominion over the scope of discovery.

■■■ Moreover, the Court finds that Rule 612 is inapplicable to the scope of discovery, because Rule 612 is contained in the Federal Rules of Evidence. When considering the promulgation and amendment of the rules defining the scope of discovery, neither Congress nor the Court would have considered placing that framework outside of the Federal Rules of Civil Procedure. Rule 612(b)'s reference to "production" must therefore serve evidentiary purposes, rather than a civil procedure function such as setting the boundaries of the scope of discovery. *See Derderian*, 121 F.R.D. at 17 ("Rule 612 is a rule of *evidence*, not a rule of *discovery*."). Following this principle, the Court interprets Rule 612(b) as serving two evidentiary functions: (1) setting the standard for the admissibility and usage of memory refreshment evidence at trial; and (2) providing for the timely procurement of memory refreshment material at trials and depositions, so that the material may later be entered into evidence or used to cross examine the witness. Neither of these functions dictate the scope of what a party is entitled to discover. Any request for the discovery of documents, memory refreshment material or otherwise, is instead governed by Rule 26(b).

Furthermore, from a practical perspective, Rule 26(b) must govern the production of memory refreshment materials in order to fully vindicate the goals of discovery. Rule 26(b) grants a deposing attorney a mechanism for efficiently identifying the material underpinning a witness's impressions of key facts and issues. "In the instant case, millions of documents have already been produced. Either party should be allowed to know what documents a witness reviewed prior to a deposition for purposes of efficacy." *See In re Pradaxa*, 2013 WL 1776433, at *3. Without knowing beforehand which documents the witness has reviewed, the witness would have to be asked whether he or she has reviewed each document. Over three million documents are at issue in this litigation—the practice would take days. Additionally, the PSC's request allows for the potential discovery of documents which may have eluded production during the written discovery process. The Rule 26(b) production of reviewed materials flushes out the possibility that the witness may have looked at a document that neither party possesses, and is therefore prudent. In the real world of litigation, counsel defending depositions, through no fault of their own, are often surprised to learn that their witness glanced at a heretofore unidentified document such as personal notes or spreadsheets which the witness prepared unknown to anyone and remembered and consulted prior to his impending deposition. *See id.* (finding unpersuasive the argument that witnesses do not independently select and review documents in preparation for their depositions). The Court finds telling the exchange between Plaintiffs' counsel and Dr. Nessel regarding a previously unknown spreadsheet. R. Doc. 2380 Exhibit K (Under Seal). Upon learning of the spreadsheet, deposing counsel informally moved to compel the spreadsheet's production under Rule 26(b). Opposing counsel agreed to consider the request. *Id.* The Court anticipates that similarly smooth exchanges will occur regarding lists of materials reviewed in anticipation of the deposition, and that these exchanges may result in the identification and production of undiscovered relevant materials. *Id.*

For the aforementioned reasons, the Court finds that Rule 26(b) is the applicable rule for determining whether documents, including memory refreshment documents sought under Rule 612, fall within the scope of discovery. Since Rule 26(b) limits discovery to nonprivileged items, the Court must examine whether a list of documents reviewed by a deponent in preparation for a deposition is discoverable under Rule 26(b).

## B. Privileges Applicable to Witness Preparation Materials

 As a rule of discovery, Rule 26 is broadly interpreted to achieve the discovery goal of "adequately informing litigants in civil trials." *Pettit v. Heebe*, Civ.A. No. 15–3084, 2016 WL 1089351, at *1 (E.D.La. Mar. 21, 2016) (citing *Herbert v. Lando*, 441 U.S. 153, 176, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979). "It is well established that the scope of discovery is within the sound discretion of the trial court." *Coleman v. American Red Cross*, 23 F.3d 1091, 1096 (6th Cir.1994)).

 Simply put, the PSC requests leave to ask a witness, "What documents did you review in preparation for this deposition." This is a textbook deposition question. *See Nutramax Labs., Inc. v. Twin Labs. Inc.*, 183 F.R.D. 458, 461 (D.Md.1998) ("During a deposition [in a case involving substantial document production], counsel questioning a witness will seldom fail to ask the witness about what he or she did to prepare for the deposition, and the identity of any documents reviewed for this purpose."). It is beyond dispute that the list of materials reviewed by a witness in preparation for a deposition contains material relevant to claims or defenses. The only potential obstacle is Rule 26(b)(1)'s restriction of discovery to "nonprivileged matter[s]."

 In the present case, millions of documents have been produced by the parties. It would encroach on the work-product doctrine to ask a witness what documents were given to him or her by counsel for review before the deposition. *See Hanover Ins. Co. v. Plaquemines Parish Government*, 304 F.R.D. 494, 500 (2015). The answer could reveal the thought process or opinion of

counsel as to which documents counsel considered important. *Id.*

However, either party should know what documents or material the witness reviewed before the deposition so that counsel can be prepared to efficiently examine the witness on these documents. Otherwise, the witness would have to be shown one document at a time, and asked if he or she reviewed Document 1, Document 2, and so on until reaching the vicinity of Document 3,000,000. This is impractical and unworkable.

Furthermore, in the non-MDL world it is routine to ask a witness what they reviewed in preparation for the deposition. This is particularly true with expert witnesses who must usually disclose in their report the material reviewed in formulating their opinion. The fact that an MDL case involves millions of documents rather than a handful should not require discarding well-established litigation practices. Of course, neither party will be permitted to inquire which, if any, of the documents reviewed were selected by counsel.

In short, a list of documents reviewed by a witness in preparation for a deposition is discoverable under Rule 26(b), because the list is relevant, proportional to the needs of the case, and not privileged.

## V. CONCLUSION

For the aforementioned reasons, **IT IS ORDERED** that Defendants' Motion for Entry of a Protective Order Regarding Attorney Work Product is hereby **DENIED.**

The motion is further **DENIED** insofar as Defendants argue that the PSC must satisfy Rule 612 of the Federal Rules of Evidence in order to obtain a list of documents witnesses reviewed in preparation for depositions. The PSC may seek the list under Rule 26(b) of the Federal Rules of Civil Procedure.

Attachment

410

Steven Glickstein
+1 212 836 8485 office
steven.glickstein@kayescholer.com

250 West 55th Street
New York, NY 10019-9710
+1 212 836 8000 main
+1 212 836 8689 fax

March 23, 2016

The Honorable Eldon E. Fallon
United States District Court for the Eastern District of Louisiana
500 Poydras Street, Room C456
New Orleans, LA 70130

Re: **Defendants' Letter Brief in Support of Protection over
 Disclosure of Work Product Protected by the Attorney-
 Work-Product Doctrine, in MDL No. 2592, in *In re:
 Xarelto Products Liability Litigation***

Dear Judge Fallon:

 Pursuant to the Court's March 17, 2016 order requesting letter briefing (Doc. 2830), Defendants submit this brief regarding a dispute that has arisen during recent depositions of Bayer witnesses. Plaintiffs have requested the identity of documents certain Bayer witnesses reviewed at the request of counsel in preparation for their depositions. Defendants have objected that the request inappropriately calls for the disclosure of opinion work product that is protected from disclosure by the attorney-work-product doctrine.

 As background, Bayer recently produced four witnesses for deposition in Amsterdam over the course of several days (February 23–March 2, 2016). Pursuant to deposition notices issued in both jurisdictions, counsel for the MDL plaintiffs and the Pennsylvania plaintiffs appeared at the depositions and questioned the witnesses. At several of the depositions, Plaintiffs' counsel asked the witnesses to disclose whether they had reviewed a particular document with counsel, or to identify what documents Bayer's counsel had provided to them in preparation for their depositions. Bayer objected to those questions on work-product grounds and instructed the witnesses not to answer, consistent with PTO 23 ¶ II.L.36. The issue also arose in the deposition of a Janssen witness on March 3–4. Defense counsel likewise objected and directed the witness not to answer, but also invited Plaintiffs' counsel to lay a foundation, an invitation that was rejected.

 Defendants respectfully request that the Court issue a declaratory ruling that the identity of produced documents shown by counsel to their clients during deposition preparation is protected from disclosure by the attorney-work-product doctrine, and enter a protective order that company witnesses do not have to disclose attorney work product at their depositions. As discussed in more detail below, the Fifth Circuit has refused a similar request for documents

reviewed by counsel with a witness in preparation for deposition, and courts both within this district and elsewhere—including the Third, Fourth, and Eighth Circuits—have held that a listing of documents counsel provided to his client in deposition preparation is attorney work product and not discoverable. *See Burns v. Exxon Corp.*, 158 F.3d 336, 339 (5th Cir. 1998); *Hanover Ins. Co. v. Plaquemines Par. Gov't*, 304 F.R.D. 494 (E.D. La. 2015); *Freeport-McMoran Sulphur, LLC v. Mike Mullen Energy Equip. Res., Inc.*, No. CIV.A 03-1496, 2004 WL 1237450 (E.D. La. June 2, 2004) (Roby, M.J.); *see also, e.g., In re Allen*, 106 F.3d 582, 608 (4th Cir. 1997); *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1329 (8th Cir. 1986); *Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir. 1985).

All of the documents that defense counsel have provided to their witnesses to review in preparation for depositions already have been produced, or are otherwise publicly available. Plaintiffs simply want to know which documents defendants' counsel think are important, interesting, or otherwise worthy of discussion with a witness for a myriad of reasons. That is an inappropriate request. This Court should hold that Plaintiffs are not entitled to know which documents defense counsel selected and the witnesses reviewed in deposition preparation.

I. **Any collection of documents defense counsel provided for their witnesses to review in preparation for depositions is opinion work product that is protected from disclosure by the attorney-work-product doctrine.**

Just last year, Judge Milazzo of this Court held that the attorney-work-product doctrine protected from disclosure the list of documents that counsel had shown to its witness in deposition preparation. *See Hanover Ins. Co. v. Plaquemines Par. Gov't*, 304 F.R.D. 494 (E.D. La. 2015); *accord Freeport-McMoran Sulphur, LLC v. Mike Mullen Energy Equip. Res., Inc.*, No. CIV.A 03-1496, 2004 WL 1237450 (E.D. La. June 2, 2004) (Roby, M.J.). This Court likewise should hold that defendants' opinion work product is protected here.

The attorney-work-product doctrine has long protected from disclosure an "attorney's mental impressions, conclusions, opinions, or legal theories." *Hickman v. Taylor*, 329 U.S. 495, 508 (1947). The Federal Rules of Civil Procedure likewise provide that a party "may not discover documents or tangible things that are prepared in anticipation of litigation or for trial by or for another party" unless the party is able to show both (1) "that it has a substantial need for the materials" and (2) that it would experience "undue hardship" without access to the work product. Fed. R. Civ. P. 26(b)(3)(A). At all events, courts "must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney." *Id.* R. 26(b)(3)(B).

Since the inception of the now-well-settled attorney-work-product doctrine, courts have made clear that where the work product in any way discloses an attorney's opinion, that work product "enjoys near absolute protection" from disclosure in discovery. *Hanover Ins.*, 304 F.R.D. at 500; *see also In re E.E.O.C.*, 207 F. App'x 426, 433 (5th Cir. 2006) (affording heightened protection to opinion work product); *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 976 n.4 (7th Cir. 1996) (same); *Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1422 (11th Cir. 1994) (opinion work product "enjoys a nearly absolute immunity and can be

discovered only in very rare and extraordinary circumstances"); *Boyer v. Gildea*, 257 F.R.D. 488, 491 n.1 (N.D. Ind. 2009) ("the immunity from discovery for opinion work product is absolute or nearly absolute").

Plaintiffs inappropriately seek to get at defense counsel's opinions. Disclosure of the list of documents counsel provided to witnesses for deposition preparation inappropriately forces defendants to provide insight into their counsel's opinion about what documents and issues are important in this litigation. As Judge Milazzo explained in *Hanover*, the universe of documents that counsel compiles for its clients to review in preparation for their depositions is protected by the attorney-work-product doctrine because disclosure of that compilation "necessarily reveals the attorney's opinions regarding the litigation":

> [T]he Court is convinced that the identity of any documents shown to the witness by counsel is, under the peculiar facts of this case, protected by the work-product privilege. According to counsel for the parties, over 20,000 documents have been produced in written discovery. Where, as here, an attorney culls through a large volume of documents and identifies those that she believes are important to the litigation, that selection of documents necessarily reveals the attorney's opinions regarding the litigation. Thus, asking a witness to identify all the documents that he was shown by the corporate attorney prior to the deposition necessarily asks the witness to reveal the thoughts and opinions of the corporate attorney. Given that opinion work product enjoys a near absolute protection, the Court has no difficulty holding that the identity of the documents is protected

*Hanover Ins.*, 304 F.R.D. at 500 (footnote call numbers omitted). Magistrate Judge Roby similarly has held that a party is not required to disclose which documents its witnesses reviewed in preparation for their depositions because "the only purpose that would be served by ordering [a witnesses] to identify the specific documents he reviewed of the total documents [the other side] has already obtained, would be to reveal the mental impressions of [the defending] counsel as to what is relevant or important from [defending counsel's] point of view." *Freeport-McMoran Sulphur*, 2004 WL 1237450, at *8. Magistrate Judge Roby noted that protection of this opinion work product is particularly appropriate where—as here—the documents included in the compilation "have previously been produced" in the litigation, or are otherwise publicly available. *Id.*; *see also, e.g., Aguinaga v. John Morrell & Co.*, 112 F.R.D. 671, 683–84 (D. Kan. 1986) (where the questioning party already had access to the documents, the only purpose behind the question concerning which documents had been shown would be to inform the opposing side of "the attorneys' process of selection and distillation of documents"; denying disclosure because "[d]iscovery would reveal nothing more than what documents the attorneys thought were relevant to the transactions").

Those decisions are consistent with Fifth Circuit precedent. In *Burns v. Exxon Corp.*, 158 F.3d 336, 339 (5th Cir. 1998), the Fifth Circuit similarly declined to compel Exxon to produce "documents reviewed by . . . a former Exxon employee[]" in preparation for his deposition." The plaintiffs had "requested the documents for the purpose of questioning the witness, but Exxon refused, claiming the documents were protected" under the attorney-work-product doctrine. *Id.*

The Honorable Eldon E. Fallon 4 March 23, 2016

at 343. The district court had denied the plaintiffs' motion to compel, and the Fifth Circuit affirmed, holding that the plaintiffs had "failed to show that they have a substantial need for the documents or that production was necessary in the interests of justice." *Id.*[1]

Numerous other courts—including the Third, Fourth, and Eighth Circuits—likewise have held that parties are not required to disclose what documents their counsel provided to their witnesses to review in preparation for a deposition because counsel's compilation of those documents is opinion work product that is protected from disclosure. *See, e.g., In re Allen*, 106 F.3d 582, 608 (4th Cir. 1997) (holding that attorney's "choice and arrangement" of documents for witness preparation "constitutes opinion work product because [counsel's] selection and compilation of these particular documents reveals her thought processes and theories regarding this litigation"); *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1329 (8th Cir. 1986) ("In cases that involve reams of documents and extensive document discovery, the selection and compilation of documents is often more crucial than legal research. . . . We believe [counsel's] selective review of [her clients'] numerous documents was based on her professional judgment of the issues and defenses involved in this case."); *Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir. 1985) ("We believe that the selection and compilation of documents in this case in preparation for pretrial discovery falls within the highly-protected category of opinion work product.").[2]

---

[1] *Burns* presented the questions whether Exxon had waived the privilege by showing documents to a *former* employee, and whether Federal Rule of Evidence 612 required disclosure of the documents reviewed. Despite the Fifth Circuit's conclusion that the identity of the documents reviewed in deposition preparation was not discoverable, one district court, without citing *Burns* and without making the necessary burden findings, has suggested that the Fifth Circuit would adopt a different position. *See Fisher v. Halliburton*, No. CIV.A. H-05-1731, 2009 WL 483890, at *1–2 (S.D. Tex. Feb. 25, 2009) (requiring disclosure of documents counsel reviewed with witness in preparation for deposition). The *Fisher* court relied on what it called "dicta" from a prior decision in which the Fifth Circuit also *declined* to require production of counsel's compilation of documents, this time in connection with an investigative audit. *Id.* (citing *In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1240 (5th Cir. 1982)). The *Fisher* decision is contrary to the Fifth Circuit's (and this district's) precedents.

[2] *See also, e.g., S.E.C. v. Brady*, 238 F.R.D. 429, 442 (N.D. Tex. 2006) ("[D]ocuments, including business records, that were specifically selected and compiled by a party or its representative in preparation for litigation are opinion work product because the mere acknowledgment of their selection would reveal mental impressions concerning the potential litigation."); *Vardon Golf Co., Inc. v. BBMG Golf Ltd.*, 156 F.R.D. 641, 647 (N.D. Ill. 1994) ("Selection of certain pieces of evidence from a mass of evidence is an important part of an attorney's preparations. Should an attorney's efforts to prepare not be kept private, the interest of the client would be ill-served because it would put the attorney to the choice of preparing adequately or revealing his strategies. Therefore, the attorney's selection process must be protected by the work product privilege."); *James Julian v. Raytheon Co.*, 93 F.R.D. 138, 144 (D. Del. 1982) ("In selecting and ordering a few documents out of thousands counsel could not help but reveal important aspects

The Third Circuit's decision in *Sporck* is particularly instructive. There, the plaintiffs sought "to compel identification and production" of documents that defense counsel selected— from among documents produced in the litigation—to be used in preparing a witness for his deposition. 759 F.2d at 314. Although the trial court initially granted plaintiffs access to that information, the Third Circuit reversed on mandamus review, holding that a compilation of documents prepared by counsel for its witnesses' deposition preparation "must be prevented to protect defense counsel's work product." *Id.* at 315. The Third Circuit protected the list of documents from disclosure because "identification of the documents as a group will reveal defense counsel's selection process, and thus his mental impressions," and "Rule 26(b)(3) place[s] an obligation on the trial court to protect against unjustified disclosure of defense counsel's selection process." *Id.* at 314, 317. The Fourth and Eighth Circuits likewise have protected from disclosure any list of produced documents prepared by counsel for purposes of its witnesses' deposition preparation. *See In re Allen*, 106 F.3d at 608; *Shelton*, 805 F.2d at 1329.[3]

---

of his understanding of the case."); *accord* David M. Greenwald et al., 1 *Testimonial Privileges* § 2:3 (3d ed. 2008) ("An attorney's selection of what she deems to be relevant case documents is a common type of opinion work product. Most courts recognize that when an attorney exercises professional skill in compiling selected documents while preparing the client's case, the documents (as compiled) may be held to be protected work product." (collecting cases)).

[3] Several courts—including courts within this district—have declined to apply *Sporck*, and the line of cases identified above, in factually distinguishable circumstances. To be clear, none of those cases affects the issue before the Court. Those courts distinguished *Sporck* on the very grounds that make *Sporck* directly on point here—namely, that it involved the disclosure of an attorney's opinions and mental impressions in the course of preparing his client and its witnesses for deposition. *See, e.g., In re San Juan Dupont Plaza Hotel Fire Litig.*, 859 F.2d 1007, 1018 (1st Cir. 1988) (ordering parties to disclose list of documents to be used as exhibits at each of the 2,000 depositions in the "sprawling litigation" because once "the deposition is held and examination commences, the questioner's document selection, and the stratagems it reveals, will become obvious to all"); *Castano v. Am. Tobacco Co.*, 896 F. Supp. 590, 596 (E.D. La. 1995) (Jones, J.) (declining to extend *Sporck* to protect from disclosure privilege log of documents that already had "been disclosed to the public"); *In re Shell Oil Refinery*, 125 F.R.D. 132, 133–34 (E.D. La. 1989) (Mentz, J.) (declining to extend *Sporck* to protect from disclosure the list of documents that plaintiffs wanted to print from defendant's document warehouse; held that any opinion would necessarily be disclosed once plaintiffs used the documents in the litigation); *Bohannon v. Honda Motor Co.*, 127 F.R.D. 536, 539 (D. Kan. 1989) (declining to extend *Sporck* to shield plaintiff from having to respond to contention interrogatories asking for a list of documents on which plaintiff would rely). In each of those cases, the courts concluded that the documents would have otherwise been disclosed at some point in the litigation, unlike in *Sporck*—as here—where counsel's opinions were "never designed to see the light of day." *E.g., In re San Juan*, 859 F.2d at 1018.

Defendants anticipate that Plaintiffs will make two "moves" in response, but neither of those arguments are compelling, and the Court should reject them here.

*First*, Plaintiffs are likely to point to the handful of decisions going the other way, and in particular the decisions from Judge David Herndon in the *YAZ/Yasmin* and *Pradaxa* MDLs, but those decisions are contrary to the Fifth Circuit's precedent and the line of cases discussed above, which are the better-reasoned majority. In short, Judge Herndon's decisions are plainly outliers. In *YAZ/Yasmin*, Judge Herndon first concluded that *Sporck* applied to prevent identification of which documents Bayer's counsel had provided to its witnesses for review because "[i]n selecting and ordering a few documents out of thousands counsel could not help but reveal important aspects of his understanding of the case." *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Relevant Prods. Liab. Litig.*, MDL No. 2100, 2011 WL 2580764, at *3 (S.D. Ill. June 29, 2011). But the court allowed the plaintiffs "to inquire of Bayer's witnesses the complete list of documents and materials the witness reviewed prior to and in preparation for the deposition" because the witnesses had reviewed some documents independent of counsel in preparation for their depositions. *Id.* at *3–4. In *Pradaxa*, even though counsel for the defendant represented that "all of the documents reviewed by the company witnesses will have been selected by counsel," Judge Herndon required disclosure of the identity of those documents because "defense counsel voluntarily disclosed that information." *In re Pradaxa (Dabigatran Etexilate) Products Liab. Litig.*, MDL No. 2385, 2013 WL 1776433, at *2 (S.D. Ill. Apr. 25, 2013) ("If defense counsel had not gratuitously revealed this information, the documents reviewed by the witnesses in preparation for their depositions could have been disclosed (as they were in the Yasmin decision) without any risk of revealing attorney-work product.").

This Court should not follow Judge Herndon's outlier view. Defendants are aware of no court that has cited the *YAZ/Yasmin* or *Pradaxa* decisions, and, indeed, one court—the Southern District of California—recently expressly declined to follow the *Pradaxa* decision. *See Stevens v. Corelogic, Inc.*, No. 14CV1158 BAS (JLB), 2016 WL 397936, at *9 (S.D. Cal. Feb. 2, 2016) (ordering disclosure only of documents independently selected by the witness for deposition preparation) ("The Court does not agree that attorney work product protection should not apply to an attorney's selection of documents when the attorney 'gratuitously disclosed' the documents a deponent reviewed were selected by counsel. It is well known by attorneys that it is common practice for counsel to prepare their clients and their clients' witnesses for depositions. Such attorney preparation necessarily includes hand-selecting documents relevant to a case to review with the witnesses.").

*Second*, Plaintiffs are likely to argue that Federal Rule of Evidence 612 requires disclosure of any documents that witnesses reviewed to "refresh [the] witness's memory." Rule 612 gives a party certain options when a witness "uses a writing to refresh memory," but, for documents reviewed before the witness testifies, only "if the court decides that justice requires the party to have those options." Fed. R. Evid. 612(a)(2). Plaintiffs have not at this point established that witnesses reviewed the documents to refresh their memory, and they will not be able to show that justice requires that they get access to the identity of documents reviewed.

To satisfy that the witness reviewed the document to refresh recollection, the requesting party must be specific. Even Judge Herndon's *YAZ/Yasmin* decision recognizes that Rule 612 is not a "general discovery device." 2011 WL 2580764, at *3. Instead, Rule 612 applies in this scenario only when "during a deposition, deposing counsel elicits testimony demonstrating a loss of memory on the part of the witness and a specific document is used to refresh that memory for the purpose of testifying." *Id.* At the recent depositions, Plaintiffs' counsel did not ask questions (or elicit answers) sufficient to make that showing.

But even so, Fifth Circuit law is clear that Rule 612 only applies to compel documents reviewed in preparation for a deposition when the plaintiffs "show that they have a substantial need for the documents or that production was necessary in the interests of justice." *Burns*, 158 F.3d at 343. In *Burns*, the court declined to compel the defendant to produce documents that were used to prepare witnesses for deposition, even though those documents had been withheld from production on privilege grounds. That holding applies here *a fortiori*. Here, all of the documents that defense counsel has provided its witnesses to review in preparation for their depositions already have been produced to Plaintiffs or are otherwise publicly available. Plaintiffs cannot establish that have a "substantial need" to know which documents counsel used to prepare the witnesses, or that identification is "necessary in the interests of justice." Indeed, in the few depositions to this point, Plaintiffs already have marked hundreds of produced documents as exhibits. There is no compelling need for them to see which documents defense counsel think are important. *See Sporck*, 759 F.2d at 318 ("Rule 612 should never implicate an attorney's selection, in preparation for a witness' deposition, of a group of documents that he believes critical to a case."); *see also Hanover Ins.*, 304 F.R.D. at 500 (holding that requesting party "ha[d] not met its burden" to prove that justice required disclosure of compilation under Rule 612); *cf.* Wright & Miller, *Federal Practice & Procedure* § 6183 ("The language of Rule 612 and the Advisory Committee Note to that provision also make it hard to justify the conclusion that the rule applies at depositions" because "[i]t is very difficult for a court to know what justice requires until the witness has actually testified at trial, when the importance of his credibility is revealed in the context of all the evidence").

This is not to say that Plaintiffs are barred from attempting to establish the evidentiary foundation required by the Fifth Circuit under Rule 612 for production of documents reviewed by a witness before testifying at deposition. If Plaintiffs believe they have established such a foundation and Defendants agree, Defendants will provide Plaintiffs with notice of the document in question. If Plaintiffs believe they have established such a foundation and Defendants disagree, the dispute can be submitted to the Court either telephonically during the deposition or more formally afterwards, in which case the Court can rule based on a particularized factual record as contemplated by the Fifth Circuit. But unless and until such an evidentiary foundation is established, the Court should make clear that the general rule of non-production applies.

This Court should hold that Plaintiffs are not entitled to a roadmap of which among the almost 3.7 million documents that have been produced in this litigation defense counsel think are important, interesting, or otherwise worthy of discussion with a witness. Allowing Plaintiffs access to the list of produced documents that defense counsel prepared for review by their

witnesses in preparation for their depositions would give Plaintiffs just that. The Court should protect defense counsel's work product and affirm the privilege.

## II. This Court should decide this issue to maintain efficiency and consistency across the Xarelto litigation.

The issue presented in this motion also bears on the coordinated Pennsylvania proceedings pending before Judge New. Pursuant to PTO 23, counsel representing the Pennsylvania plaintiffs appeared at the recent depositions and asked questions. Pennsylvania counsel also raised objections about the identity of documents Bayer's counsel reviewed with the witnesses in deposition preparation.

Defendants of course have no objection to the Court coordinating with Judge New on this matter and involving him in its resolution as appropriate. Nonetheless, it is appropriate for this Court to resolve the issue to preserve efficiency and consistency in Xarelto actions, particularly in light of PTO 23 (¶ II.M.38), which contemplates that this Court will resolve any "disputes during or relating to depositions" taken in the MDL. *See, e.g.*, 28 U.S.C. § 1407 (MDL procedure exists to "promote the just and efficient conduct of [related] actions" and serve "the convenience of parties"); *Manual for Complex Litigation* (4th) § 20.313 (recognizing need for "coordinating rulings on discovery disputes").

\* \* \*

Defendants respectfully request that the Court order that the identity of produced documents shown by counsel to their clients during deposition preparation is protected from disclosure by the attorney-work-product doctrine, and enter a protective order that witnesses do not have to disclose attorney work product at their depositions.

Respectfully submitted,

*/s/ Steven Glickstein*

Steven Glickstein

cc: MDL Lead and Liaison Counsel

820 O'Keefe Avenue
New Orleans, Louisiana
70113-1116

p: (504) 581-4892
f: (504) 561-6024
e: info@hhklawfirm.com

hhklawfirm.com

Harry Herman (1914-1987)
Russ M. Herman*
Maury A. Herman*
Steven J. Lane
Leonard A. Davis*
James C. Klick[1]
Stephen J. Herman
Brian D. Katz
Soren E. Gisleson
Joseph E. Cain

Jennifer J. Greene[2]
John S. Creevy
Aaron Z. Ahlquist[3]
Craig M. Robinson
Mikalla M. Kott[4]
Danielle Treadaway Hufft
Patrick R. Busby[5]
Madelyn O. Breerwood
Alexandra E. Faia
Anne E. DeVaughn
Charles M. King

This Firm and its Partners Are Also
Partners in Herman Gerel, LLP

* A Professional Law Corporation
[1] Also Admitted in Texas
[2] Also Admitted in Arkansas
[3] Also Admitted in Tennessee
[4] Also Admitted in Colorado
[5] Also Admitted in Alabama
& Oklahoma

Of Counsel:
Herbert A. Cade
Morton H. Katz*
Joseph A. Kott, M.D., J.D.

March 23, 2016

*VIA EMAIL ONLY*

Honorable Eldon E. Fallon
c/o United States District Court
Eastern District of Louisiana
500 Poydras Street
Room C456
New Orleans, LA 70130

Re: *In re: Xarelto (Rivaroxaban) Products Liability Litigation*
 **MDL 2592**

Dear Judge Fallon:

## I. INTRODUCTION

In the PSC depositions of company employee/witnesses, the latter have been asked to identify materials reviewed in advance of their deposition as part of the deposition preparation process. Defendants' counsel have objected to this line of questioning on attorney "work product" grounds, and a meet and confer process has not resolved the dispute.

The PSC is entitled to discover what materials a witness reviewed, and a simple listing of these materials provided in advance of depositions does not reveal the thought process of defense counsel. Moreover, when asked direct questions on this topic, employee/witnesses have either been unwilling or unable to answer the questions without the aid of such a list. For example, Andrea Derix, Bayer's Global Team Leader for Xarelto, could not provide even a reasonable estimate of the amount of materials she reviewed, stating that such a question is "really difficult to respond to." Derix at 258:11 – 260:8 (Exhibit A). Wolfgang Mueck, a Bayer pharmacologist who has worked on Xarelto for more than 10 years, testified in deposition to having reviewed documents for several days, but also could not state how many or which documents; upon a request for a list of these documents, defense counsel objected to providing same based upon a work product privilege. Mueck at 246:09 – 248:23 (Exhibit B). Dr. Andrea Horvat-Broeker, a Bayer medical doctor involved in global pharmacovigilance related to Xarelto for over 10 years, reviewed many documents to prepare for her deposition, affirmed that the documents refreshed her memory, but was instructed not to disclose those documents by her attorney who asserted a work product privilege. Horvat-Broeker at 449:9 – 450:1; 457:7 – 459:6 (Exhibit C).

March 23, 2016
PAGE 2

As a result of these witnesses' answers and the objection by defense counsel, the PSC has no way to discover and review the materials a witness relied upon in preparing for the deposition, much less question the witness about these documents. Accordingly, the PSC has requested in deposition notices going forward that a list of materials reviewed by the witnesses be provided in advance of the depositions. Defendants have indicated that they will not provide such a list and will maintain their work product objections. This issue is now ripe for resolution by the Court.

## II. ARGUMENT

The disclosure of a compilation of materials reviewed by a witness prior to his or her deposition poses no real danger of disclosing any litigation strategy or attorney thought processes of substance, and therefore such a list is not entitled to work product protection. Defendants' objection, coupled by the witnesses' inability to identify the materials during the depositions, prevents the PSC from obtaining this discoverable information. The PSC's request for a listing of the materials does not reveal who selected the materials (whether it was the witness, counsel, a combination of both or some other method), why the materials were selected, and any meaningful thought process or litigation strategy of defense counsel.

This issue has been addressed by other MDL Judges. For example, Bayer unsuccessfully raised this same issue in the *In re Trasylol Products Liability Litigation*. The plaintiffs had requested that Bayer produce items reviewed by a company executive in preparation for her deposition. Bayer raised the following work product argument:

> [I]ts attorneys selected only discrete individual documents from amongst the voluminous documents produced in this case thus far to prepare [the witness] for her deposition, and that act of culling and selection of a discreet number of documents constitutes Bayer's attorneys' opinion of the important issues in the case and necessarily reveals their trial strategy.

2009 WL 936597 at *3 (S.D. Fla. April 7, 2009). Judge Middlebrooks rejected this proposition, finding that disclosure of such documents did not "create[] a real, non-speculative danger of revealing counsel's thoughts" and Bayer's position "basically would extend the work-product privilege into the norm rather than the exception." *Id.* at *4.

In the Yaz/Yasmin Litigation, Judge Herndon of the Southern District of Illinois, faced with the same argument from Bayer, ordered that "Plaintiffs will be permitted to request [the] complete list [of documents and materials the witness reviewed prior to and in preparation for the deposition] prior to the start of each deposition and it will be produced no later than 72 hours before the start of the deposition and supplemented as needed up to the start of the deposition." *In re Yasmin and Yaz (Drospirenone)*

March 23, 2016
PAGE 3

*Marketing, Sales Practices and Relevant Products Liability Litig.*, 2011 WL 2580764 at \*3 (S.D. Ill. June 29, 2011).

Judge Herndon followed the same procedure in the Pradaxa Products Liability Litigation (an MDL involving a drug in the same class as Xarelto) reasoning that:

> In the instant case, millions of documents have already been produced. Either party should be allowed to know what documents a witness reviewed prior to a deposition for purposes of efficacy. Neither side will be permitted to ask which, if any, of the documents reviewed were selected by counsel. To the extent that the defendants' voluntary disclosure regarding the selection of documents reveals attorney-client work product – they brought such a consequence on themselves.

*In re Pradaxa (Dabigatran Etexilate) Products Liability Litig.*, 2013 WL 1776433 at \*3 (S.D. Ill. April 25, 2013).

Judge Conway reached a similar conclusion when this issue was brought before her as part of the discovery proceedings in *In re Seroquel Products Liability Litigation*, 2008 WL 591929 (M.D. Fla. Feb. 28, 2008). In approving the Magistrate's prior holding on the topic, Judge Conway indicated that otherwise non-privileged documents reviewed prior to a deposition were not entitled to work product protection. *Id.* at \*3-4. Accordingly, the documents should have been identified and produced. *Id.; see also In re Seroquel Products Liability Litig.*, 2008 WL 215707 (M.D. Fla. Jan. 24, 2008).

The Fifth Circuit has not specifically ruled upon the application of the work product doctrine in the present context, but the Southern District of Texas did so and held that a list of documents reviewed in advance of depositions was not entitled to work product protection, and therefore was discoverable. *Fisher v. Halliburton*, 2009 WL 483890 at \*1-2 (S.D. Tex. Feb. 25, 2009) ("[T]o imbue every compilation of documents reviewed by a witness before testifying – at trial or at deposition – with work product privilege protection would all but write Rule 612 of the Federal Rules of Evidence out of existence."). The *Fisher* Court concluded that the Fifth Circuit would support its holding, citing Fifth Circuit dicta from *In re International Systems & Controls Corp. Securities Litigation*, 693 F.2d 1235, 1240 (5th Cir. 1982) (binders of information developed in special investigation were not opinion work product as they were "not the mental impressions, conclusions, opinions or legal theories of an attorney")(internal quotes omitted). The Southern District of Texas distinguished the lack of protection attached to the identity of the documents reviewed in preparing for the depositionfrom the obviously privileged conversations between the witness and his counsel regarding the documents. 2009 WL 483890 at \*2.

March 23, 2016
PAGE 4

The PSC is aware of a least one case that the Defendants may rely upon from the Third Circuit – *Sporck v. Peil*, 759 F.2d 312 (3d Cir. 1985). *Sporck* was a split decision with a strong dissent. *See id.* at 319-320. The dissenting opinion has been followed by a number of Courts and the primary opinion has been described as a minority view. *See N. Natural Gas Co. v. Approximately 9117.53 Acres*, 289 F.R.D. 644 (D. Kan. March 5, 2013) (Mag. Bostwick); *see, e.g., In re San Juan DuPont Plaza Hotel Fire Litig.*, 859 F.2d 1007, 1015 (1st Cir. 1988); *U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, 2008 WL 2548129 at *10 (D. Kan. June 23, 2008) ("This Court has previously held (in the context of an inquiry into what documents a deponent reviewed prior to a deposition) that the selection and grouping of information does not transform discoverable documents into work product.").

As Judge Seitz explained in *Sporck*, the risk of providing a list of materials reviewed divulging anything approaching work product is miniscule:

> The problem with petitioner's theory is that it assumes that one can extrapolate backwards from the results of a selection process to determine the reason a document was selected for review by the deponent. There are many reasons for showing a document or selected portions of a document to a witness. The most that can be said from the fact that the witness looked at a document is that someone thought that the document, or some portion of the document, might be useful for the preparation of the witness for his deposition. This is a far cry from the disclosure of a lawyer's opinion work product. Even assuming that the documents were selected by the petitioner's attorney, the subject matter is undifferentiated that its potential for invasion of work product is miniscule at best.

*Sporck*, 759 F.2d at 319 (Seitz, J., dissenting).

### III. CONCLUSION

The Defendants and their employee/witnesses should be required to identify the documents these witnesses have reviewed in preparation for giving deposition testimony. This allows for the meaningful and efficient discovery of a witness's testimony by deposition, with no demonstrable exposure of the opinions or case strategy of any counsel who may have provided any or all of the material to the witness for review. As often as not, this material is selected in anticipation of the questions likely to be asked by plaintiffs' counsel, which cannot reasonably be equated to what the witness's own counsel considers important to a defense of the case. Therefore, the information requested, i.e. a mere listing of materials reviewed, is not the type of information that deserves work product protection, and clearly is discoverable. Specifically, the PSC proposes a procedure that requires that the Defendants' employee/witnesses simply provide a list of the materials that were reviewed in advance of a deposition, without revealing how, why,

March 23, 2016
PAGE 5

or by whom the documents were selected. This process further assures that the work product privilege is not in any way implicated.

Sincerely,

/s/ Leonard A. Davis

**LEONARD A. DAVIS**
**Co-Plaintiffs' Liaison Counsel**

LAD:lmf
Attachments
cc: Plaintiffs' Executive Committee *(via email)*
 Plaintiffs' Steering Committee *(via email)*
 James Irwin, Esq. *(via email)*
 John Olinde, Esq. *(via email)*
 Susan Sharko, Esq. *(via email)*
 Steven Glickstein, Esq. *(via email)*
 William Hoffman, Esq. *(via email)*
 Tim Coon, Esq. *(via email)*